221 So.2d 129 (1969)
The STATE of Florida, Petitioner,
v.
Hiram Cazes PARNELL, Respondent.
No. 37136.
Supreme Court of Florida.
April 2, 1969.
*130 Earl Faircloth, Atty. Gen., and Harold Mendelow, Asst. Atty. Gen., for petitioner.
Richard Barest, Miami, and Joe N. Unger, Miami Beach, for respondent.
ROBERTS, Justice.
We have before us for review on petition for conflict certiorari a decision of the District Court of Appeal, Third District, in Parnell v. State, Fla.App. 1968, 204 So.2d 910, reversing a judgment convicting the defendant, respondent here, of breaking and entering with intent to commit grand larceny and of petit larceny.
The residence which the defendant was charged with, and convicted of, breaking and entering was the property of one Garwood. On the day following the Garwood burglary, an officer posing as a "fence" met defendant at a downtown motel and learned that he was the perpetrator of several unsolved burglaries in the Dade County area. He had in his possession credit cards belonging to, and stolen the night before from, the Garwoods and a fur coat answering the description of one stolen from the Meek residence about a month before. He was arrested for possession of stolen goods and jailed. Following defendant's arrest, one of the officers obtained a search warrant to search his home for other items stolen from the Meek residence. However, the affidavit in support thereof failed to set forth the facts outlined above upon the basis of which the search warrant was obtained, as required by § 933.18, Fla. Stat., F.S.A., so it was technically invalid. While waiting for his partner to arrive with the search warrant, the other officer kept the defendant's house under surveillance with binoculars and observed the defendant's wife place upon the dining room table several items fitting the description of other items stolen from the Garwoods. Upon being admitted to defendant's home by his wife, the officers served the defendant's wife with the search warrant and inquired about the Garwood property, still upon the dining room table. The defendant's wife said that the items belonged to her husband and that he had got them the day before. She was informed that the goods were stolen and that she was under arrest for possession of stolen goods, whereupon she became hysterical. Because defendant's wife had five small children, one of which was a two-week-old breastfed infant, the officers did not at that time (late at night) take her down to the police station for booking. They did, however, take possession of the goods stolen from the Garwoods and a bag containing burglar tools lying upon the table. They also took a shotgun stolen from the Garwoods which was found in a search of the bedroom. They returned the next day and took defendant's wife into custody, having in the meantime obtained a warrant for her arrest.
Upon these facts, the appellate court concluded that the trial judge committed reversible error in admitting into evidence against defendant the stolen Garwood property found in defendant's house. The court intimated that, by leaving the defendant's wife with no restrictions on her liberty, there was no arrest to form the basis for a search; and it held, unequivocally, that the search of the dwelling of the defendant was not incident to the arrest of his wife but, on the contrary, "the arrest of the defendant's wife on the day of the search, if such was an arrest, was incident to the search." Parnell v. State, supra, 204 So.2d at page 912.
In this petition, the State contends that insofar as the appellate court's decision may be interpreted as holding that there was no arrest of the defendant's wife, it is in direct conflict with the decisions of this court in Melton v. State, Fla. 1954, 75 So.2d 291, and Giblin v. City of Coral Gables, Fla. 1963, 149 So.2d 561. These cases stand for the proposition that *131 an arrest is legally made when there is a purpose or intention to effect an arrest, an actual or constructive seizure or detention is made by a person having present power to control the person arrested, and such purpose or intention is communicated by the arresting officer to, and understood by, the person whose arrest is sought. In Melton, this court said that all of these elements were present and an arrest effected when, after finding a cache of illicit whiskey, the officer informed the defendant of his intention to take her to the county jail and lodge a charge against her for violation of the liquor laws. Melton v. State, supra, 75 So.2d at page 294. In Giblin, it was held that the appellant was legally arrested within the city limits of Coral Gables when the car she was driving was stopped for speeding by an officer of that city, even though her husband then took control of the car and drove away and the car was not overtaken and the appellant re-apprehended until outside the city limits of Coral Gables. We said in the Giblin case that "The sufficiency of constructive rather than manual apprehension is, of course, well established." Giblin v. City of Coral Gables, supra, 149 So.2d at page 562.
From the facts stated in the decision here reviewed, as summarized above, it is clear that all the elements of an arrest were present in the instant case. It is well settled that the fact that an accused is not taken into actual custody at the time of an arrest does not diminish one whit the legal effect of the arrest at that time. See Giblin v. City of Coral Gables, supra, 149 So.2d 561. Can it be seriously contended that, had the arresting officers been armed with a warrant of arrest, their humanitarian act in allowing the defendant's wife to remain at home overnight with her helpless children would have nullified the arrest by virtue of such warrant? We do not think so. And an arrest without a warrant for a crime being committed in the presence of the arresting officers has, as it must have, exactly the same efficacy and legal effect as an arrest by means of a warrant based on probable cause. It might be noted that, although perhaps not technically a release of the defendant's wife on her own recognizance, the officers' humanitarian act, in the constraining circumstances then and there present, had the same practical effect as, and was equivalent to, such a release. But prior to such release, the defendant's wife had been legally arrested; and insofar as the appellate court's decision may be interpreted as holding to the contrary, it is in direct conflict with the cases cited above.
As noted, the appellate court held also that the items stolen from the Garwoods and found on the dining room table and in the bedroom of defendant's house were not admissible in evidence against him even if the arrest of defendant's wife was valid. This conclusion was based on its finding that the arrest was "incident to the search" of defendant's house rather than the search being incidental to the arrest. It is not clear whether the appellate court, in speaking of a "search", was referring to the clandestine surveillance of the defendant's house made by one of the officers while awaiting the arrival of his partner with the search warrant, or to the observation and search made by the officers after they entered the house under the authority of the technically invalid search warrant. In either case, the decision in this respect is in direct conflict with the decisions referred to hereafter.
The searches and seizures denounced by the Fourth Amendment to the United States Constitution and Section 22 of the Declaration of Rights of the Florida Constitution, F.S.A. are "unreasonable" searches and seizures. It is well settled that when an officer, while engaged in performing his lawful duties, observes contraband items or goods that he has probable cause to believe are stolen, such goods may be seized without a search warrant and are admissible in evidence. In Gaskins v. State, Fla. 1956, 89 So.2d 867, police officers investigated and searched an unattended vehicle parked partly on the pavement *132 with no lights burning and found lottery paraphernalia under the seat of the car. Shortly thereafter, the defendant returned to the car, disclaimed any knowledge of the paraphernalia, and was arrested without a warrant for a traffic violation. In a subsequent prosecution of defendant on a lottery charge, the lottery paraphernalia found under the seat of his car was admitted into evidence against him, over his objection. In affirming the conviction this court pointed out that the officers' search of the unlighted, unattended, illegally-parked vehicle in the performance of their duties as police officers was "perfectly reasonable and justifiable", and that the contraband evidence coming to light and seized in the course of that search without a warrant was "legally obtained and therefore properly admissible at the subsequent trial."
The decisions of the federal courts under the Fourth Amendment to the federal constitution are in accord with this view. In Harris v. United States, 1968, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067, a police officer making a routine check of an impounded vehicle, as required by law, found and seized contraband material. In holding that it was admissible in evidence, the court affirmed that
"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."
In keeping the house under surveillance while awaiting the arrival of his partner with the search warrant, the officer was performing his duty as a police officer. The possibility of the arrival of confederates of the defendant and the necessity of preventing the destruction or removal of the stolen goods not only justified but required such surveillance. The surveillance was not instituted until after the officers had information connecting the defendant with the Garwood and Meek burglaries and had reason to believe that items stolen in such burglaries, in addition to those found in the possession of the defendant at the time of his arrest, would be inside his dwelling. In these circumstances the clandestine surveillance of defendant's house was reasonable and justifiable and not an invasion of the privacy of the defendant, as here contended by the defendant. Cf. State v. Coyle, Fla.App.2d 1966, 181 So.2d 671. Insofar as the appellate court's decision may be interpreted as holding to the contrary, it is in direct conflict with the decisions referred to above.
If the search referred to by the appellate court was the officers' observation of the items stolen from the Garwoods lying in plain view on the dining room table after they entered the home under the authority of a technically invalid search warrant and the subsequent search of the bedroom to find the missing shotgun stolen from the Garwoods, then its decision conflicts with the decisions cited above and with State v. Smith, Fla.App. 4th 1967, 193 So.2d 23; Range v. State, Fla.App.2d 1963, 156 So.2d 534; and Chance v. State, Fla.App.2d 1967, 202 So.2d 825. In each of these cases, contraband evidence was lying in plain view of, and observed by, an officer engaged in performing his duty as a police officer, and the defendant was thereafter arrested without a warrant on a charge growing out of his possession of such contraband. In Range v. State, supra, 156 So.2d 534, 537, the court said: 
"With respect to validity of the search, the piece of paper which was seized was visually recognized by the arresting officer from outside appellant's car prior to his arrest of appellant; its disclosure was not through search but through the position in which it lay upon the front seat of appellant's vehicle."
Here, the officers were lawfully in the defendant's home to search for stolen items which they had reason to believe were there, although the search warrant covering such items was technically insufficient. The stolen Garwood property was *133 not disclosed to them through search but through its position on the dining room table. In short, while lawfully in the house on an official mission, the officers discovered a crime being committed in their presence, i.e., possession of stolen goods. Their arrest without a warrant of the defendant's wife for this crime, their subsequent search of the house, and their seizure of the stolen goods were reasonable and lawful under the decisions cited above; and by the same token, and under the authority of the same decisions, the evidence thus obtained was legally obtained and therefore admissible in evidence against the defendant at the subsequent trial. The decision of the appellate court, holding that the evidence was inadmissible because obtained as a result of a search which was not incident to a lawful arrest, is therefore in direct conflict with the decisions cited above.
For the reasons stated, the decision here reviewed should be, and it is hereby,
Quashed.
ERVIN, C.J., THOMAS (retired) and CALDWELL (retired), JJ., and SPECTOR, District Court Judge, concur.