[Crim. No. 12571.   Second Dist., Div. One.   May 1, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. MANUEL BORRAZA ALVARADO, Defendant and Appellant.

Manuel Borraza Alvarado, in pro. per., Morton Herbert, under appointment by the Court of Appeal, and Herbert & Levine for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philip L. Siracuse, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was charged with possession of heroin (§ 11500, Health & Saf. Code), and two prior state felony narcotic convictions and one in the federal court. The People's case was submitted to the trial judge on the transcript of the testimony taken at the preliminary hearing; no defense was offered. The trial judge found defendant guilty as charged and the allegation of the first prior to be true; the second was stricken and no finding was made on the third. Defendant was sentenced to the state prison; it was ordered that the sentence run concurrently with that imposed in a previous case. He appeals from the judgment.

On August 31, 1965, around 12:05 a.m., Officers Morales and Croft, in uniform and on duty in a marked police vehicle, saw defendant walking westbound on Brooklyn Avenue; as he approached, he was facing the police car and when he came to the entrance of an alley off of Brooklyn, he turned into it and began running northbound down the alley. Because of numerous burglaries in the area, the officers decided to investigate defendant; they made a left turn into the alley and followed him. The officers saw him run past Cincinnati Street down the alley "into an apartment in the house" and up the rear stairway to the second floor. Officer Morales got out of the vehicle and followed him up the stairs to the second floor and down a hallway; it was dark and he did not see defendant again until he approached the second stairway leading to a possible attic when he turned on his flashlight. In the ray of light he saw defendant sitting down in a corner holding a newspaper (Exh. 2) on his lap. The officer drew his gun and ordered defendant to come down with the newspaper in his hand so that he could "watch the newspaper"; as defendant walked to the end of the stairs, the officer ordered him to drop

the newspaper and escorted him out to the police car. There the two officers made a cursory search of defendant to determine if he had any weapons. In the course of the search, Officer Morales noticed that defendant was very nervous, shaking and sweating, and when he turned the flashlight into his eyes, noticed beads of perspiration on his forehead and that his eyes remained pinpointed, indicating to Officer Morales that defendant had ''probably just had a fix in the arm.'' He testified that he could tell defendant was nervous also by the manner in which he spoke. Officer Morales found a pearl handle knife about two inches long in defendant's back pocket; Officer Croft found a package of Camel cigarettes and two match boxes in his front pocket. When Officer Croft laid the cigarettes and match boxes on the trunk of the patrol car, some white powdery substance (5 milligrams of heroin) fell onto the car. Thinking that the white powdery substance might be heroin, Officer Morales proceeded back to inspect the area where defendant originally had been found at the top of the stairs. There he saw a bunched-up piece of newspaper about 12 inches from where defendant had been sitting; he picked it up and inside the paper found a balloon containing a white powdery substance. He then picked up the newspaper (Exh. 2) which defendant had previously dropped; examining it, he found that the lower left-hand corner of the newspaper had been torn out. He then proceeded out to the patrol car where he arrested defendant. In the balloon were 6.82 grams of heroin.

Appellant contends that the search was illegal, thus the evidence obtained as a result thereof was inadmissible. The evidence consisted of three exhibits—5 milligrams of heroin (which fell on the trunk of the police car from the package of Camels and match boxes taken from defendant's pocket) and the balloon containing 6.82 grams of heroin (Exh. 1), the newspaper (Exh. 2) and defendant's shirt (Exh. 3). This is the first time defendant has raised the issue of admissibility.

The record shows that by stipulation the cause was submitted to the trial court on the testimony contained in the transcript of the proceedings had at the preliminary hearing; therein each side reserved the right to offer additional evidence, and all stipulations entered into at the preliminary hearing were deemed entered into in the trial court. The stipulation also provided that ''all exhibits received at the preliminary hearing are deemed received in evidence [at the

trial], subject to [the trial] Court's ruling." The transcript demonstrates that during the course of the preliminary hearing defense counsel interposed no objection to any of the testimony given, and made neither objection to the admission of the three exhibits nor motion to strike. The only action taken by defendant was at the end of the People's case when he moved to dismiss on the ground that the officer had no legal right to make the search. Even then no argument or citation of authority was given in support of the motion, and the same was denied by the committing magistrate. Even at the trial in the superior court, after the submission of the cause, at which time it was stipulated that the three exhibits received in evidence at the preliminary hearing be deemed received in evidence for the purpose of the trial, subject "to any legal objection of Mr. Osterman [defense counsel]," defense counsel made neither objection to the admission of the evidence nor a motion to strike, and offered no defense on behalf of his client. In arguing the cause to the trial judge, defendant's counsel made no mention of the search or the evidence; his sole argument was that defendant "was in a drunken stupor at the time" which, while no defense, "would go only to the mitigation of sentence."

Having called to the attention of the trial judge nothing concerning the admissibility of the evidence, defendant gave him no opportunity to rule on the specific evidentiary questions he now raises; having failed to properly object in the trial court, he cannot now be heard to argue these matters on appeal for the first time. "Apparently it is appellant's contention that even though he stipulated that the People's case might be submitted upon the testimony taken at the preliminary examination, and even though at the trial he made no objection to or motion to strike out that testimony, the trial judge should have announced or in some manner indicated that he would not follow that particular ruling of the committing magistrate. There was no such responsibility on the part of the trial judge. It was the duty of appellant to object to such testimony as he deemed objectionable. The trial judge was entitled to rely, in the absence of an objection to a particular testimony, upon the stipulation that the People's case was submitted on the testimony taken at the preliminary examination. This contention of appellant is not sustained." (*People* v. *Graves,* 84 Cal.App.2d 531, 535 [191 P.2d 32]; *People* v. *Jackson,* 177 Cal.App.2d 181, 183 [1 Cal.Rptr. 857]; *People* v. *Miller,* 205 Cal.App.2d 116, 121-122 [22 Cal.Rptr.

786].) The burden is on defendant in the trial court to make any objections to evidence which he deems to be inadmissible; in the absence thereof, the trial judge may rely upon the stipulation submitting the cause on the testimony taken at the preliminary hearing. ■ "The law is clear that where no question of search and seizure was raised in the trial court the appellant cannot raise it for the first time on appeal." (*People* v. *Gurrola*, 218 Cal.App.2d 349, 354 [32 Cal.Rptr. 368]; *People* v. *Hyde*, 51 Cal.2d 152, 157 [331 P.2d 42]; *People* v. *Martin*, 228 Cal.App.2d 677, 678 [39 Cal.Rptr. 669]; *People* v. *Saldana*, 233 Cal.App.2d 24, 33 [43 Cal.Rptr. 312].)

■ However, the record supports the conclusion that the search was lawful and the evidence acquired by reason thereof was admissible. ■ A little after midnight, the officers, in the exercise of their official duties and in uniform in a marked police vehicle, were patrolling an area in which numerous burglaries had taken place; defendant was walking toward the police vehicle when suddenly he turned into an alley and ran; it is obvious that recognizing the police vehicle, defendant wanted to avoid an encounter with the officers. ". . . a police officer may question a person outdoors at night when the circumstances are such as would indicate to a reasonable man in a like position that such a course is necessary in the discharge of his duties." (*People* v. *Hilliard*, 221 Cal.App.2d 719, 723 [34 Cal.Rptr. 809].) There is nothing improper in an officer's questioning persons under such circumstances (*People* v. *Blodgett*, 46 Cal.2d 114, 117 [293 P.2d 57]; *People* v. *Martin*, 46 Cal.2d 106, 108 [293 P.2d 52]; *People* v. *Michael*, 45 Cal.2d 751, 754 [290 P.2d 852]); and in view of the hour, the area and the conduct of defendant, it was not unreasonable for the officers to follow him for the purpose of questioning him. ■ The reasonableness of the officers' decision to investigate the situation is determined in the light of the circumstances appearing to them at the time they were required to act. (*People* v. *Evans*, 175 Cal.App.2d 274, 276 [345 P.2d 947]; *People* v. *Wiley*, 162 Cal.App.2d 836, 838 [328 P.2d 823].) ■ The combination of circumstances having created a suspicion in the mind of Officer Morales, he decided to investigate and followed defendant in the police car. When he observed defendant enter an apartment house and run up the rear stairs, Officer Morales proceeded on foot to follow him. He lost sight of defendant but after turning on his flashlight found him sitting in the dark on the second floor landing with a newspaper in his lap. Not knowing what, if

anything, the newspaper contained, or if a weapon lay beneath it, the officer drew his gun and ordered defendant out of the corner and down the stairs and then to drop the newspaper. At the patrol car the officers searched him for weapons. The right to investigate gives rise to the right to conduct a reasonable superficial search for concealed weapons to protect the safety of the officers, if the circumstances warrant it. (*People* v. *Garrett,* 238 Cal.App. 324, 327 [47 Cal.Rptr. 731]; *People* v. *Martines,* 228 Cal.App.2d 245, 247 [39 Cal.Rptr. 526]; *People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Hilliard,* 221 Cal. App.2d 719, 723 [34 Cal.Rptr. 809].) Here the circumstances justified the investigation and the cursory search for weapons. If in the course of this search contraband is uncovered, it is admissible evidence (*People* v. *Martin,* 46 Cal.2d 106, 108 [293 P.2d 52]; *People* v. *Martines,* 228 Cal.App.2d 245, 247 [39 Cal.Rptr. 526]); five milligrams of heroin fell onto the trunk of the patrol car from certain objects taken from defendant's pocket. The narcotic was properly admitted in evidence.

During the search for weapons Officer Morales noted from defendant's appearance and manner of speaking that he was very nervous; he was shaking and sweating, with beads of sweat visible on his forehead, and his eyes remained pinpointed when the officer turned the light from his flashlight into his eyes. These circumstances indicated to him that defendant "probably just had a fix in the arm." Thus, when Officer Croft laid the package of cigarettes and two match boxes on the trunk of the police vehicle and a white powdery substance fell from them onto the car, Officer Morales, "thinking this white powdery substance might be heroin," decided that he "was going up and check the area where the defendant was seated." Moreover, at that time, those same circumstances were sufficient to cause Officer Morales, a trained officer, to believe that defendant then was under the influence of a narcotic, and sufficient to arouse the officer's suspicion that he was in the possession of a narcotic (§ 11500, Health & Saf. Code). Defendant then was subject to arrest under section 836.1, Penal Code, for a public offense committed in the presence of the officers; he was also subject to arrest on the basis that there was reasonable cause for them to believe that he was committing a felony (§ 836.3). However, the arrest was not made until Officer Morales recovered the container of heroin from the crumpled piece of paper found

where defendant had been sitting in the dark, and the newspaper from which a portion had been torn. Not only was the officer justified in returning to the place where defendant had been found but in taking the heroin and newspaper. Both were in plain sight, and things open to view do not require a search. (*People* v. *Martin*, 45 Cal.2d 755, 762 [290 P.2d 855] ; *People* v. *Terry*, 61 Cal.2d 137, 152 [37 Cal.Rptr. 605, 390 P.2d 381].) In any event, a search conducted as an incident to a lawful arrest is valid even though it precedes the arrest. (*People* v. *Simon*, 45 Cal.2d 645, 648 [290 P.2d 531] ; *People* v. *Hammond*, 54 Cal.2d 846, 853 [9 Cal.Rptr. 233, 357 P.2d 289] ; *People* v. *Torres*, 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823].) Defendant was lawfully arrested without a warrant. ■ ''Reasonable or probable cause is shown if a man of ordinary care and prudence would be led to believe and conscientiously entertain an honest and strong suspicion that the accused is guilty.'' (*People* v. *Cockrell*, 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116] ; *People* v. *Torres*, 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823] ; *People* v. *Ingle*, 53 Cal.2d 407, 415 [348 P.2d 577] ; *People* v. *Fischer*, 49 Cal.2d 442, 446 [317 P.2d 967].)

■ Appellant argues that the testimony of Officer Morales that he had ''probably just had a fix is to be condemned in that no proper foundation was laid as to Officer Morales' ability to detect addiction. The sole foundation made was that the officer had some training in detecting possible heroin addicts.''

Such an argument will not be considered by this court unless an objection to the officer's testimony was specifically made on the ground of lack of proper foundation in the trial court. ''The trial proceeded upon the theory that the officer was an expert upon the subject of his testimony and the statement by the court that he was an expert was not challenged by defendant. . . .'' (*People* v. *Mason*, 37 Cal.App.2d 407, 410 [99 P.2d 567] ; *People* v. *Conterno*, 51 Cal.App.2d 167, 169 [124 P.2d 610].) Here defendant failed at both the preliminary hearing and the trial to interpose either a specific or general objection to the qualifications of the officer as an expert in the area of drug addiction.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied May 11, 1967, and appellant's petition for a hearing by the Supreme Court was denied June 28, 1967.